76400. COHUTTA BANKING COMPANY v. HOME FEDERAL
SAVINGS & LOAN ASSOCIATION OF ROME.
(372 SE2d 689)

POPE, Judge.

Appellant Cohutta Banking Company brought suit against appellee Home Federal Savings & Loan Association, seeking to recover damages under the Uniform Commercial Code (OCGA § 11-4-103 (5)) for Home Federal's failure to give "wire advice" notice of non-payment of a check in the amount of $53,500 as required by the rules of the Federal Reserve Bank. The trial court directed a verdict in favor of Home Federal and Cohutta appeals. *Held:*

The facts presented in the case were either stipulated or undisputed. The check in question was drawn on the account of S & S Wholesale at Home Federal and deposited to the account of Earl's Used Cars at Cohutta on September 12, 1983. The check was then sent through the National Bank of Georgia (NBG), Cohutta's correspondent bank, to the Federal Reserve Bank in Atlanta, and from there to the Federal Home Loan Bank, where it was received on September 14. S & S Wholesale had issued a stop payment order and when Home Federal received the check on September 14 it promptly returned the check to the Federal Reserve Bank in Atlanta. Home Federal did not give wired notice that the check was being returned as required by Regulation J and Operating Circular 13 of the Federal Reserve Bank, and for unknown reasons the check did not reach Cohutta until September 23. That same day NBG also notified Cohutta by telephone of the returned check.

It was undisputed that Cohutta had the right to "charge back" dishonored checks to funds available from the account of Earl's Used Cars, as specifically set forth in the account agreement. See OCGA § 11-4-212; *National Bank of Ga. v. Weiner*, 180 Ga. App. 61, 65 (348

SE2d 492) (1986). On September 14, the branch of Cohutta which handled the Earl's Used Cars account was closed for business. The beginning balance on September 15 was $41.71; no checks were posted as deposits in the account prior to the close of banking hours at 2:00 p.m., but between 2:00 p.m. on September 15 and 2:00 p.m. on September 16 a total of $168,604.72 was deposited to the account; the closing balance on September 16 was $43,926.99. The ending balance in the Earl's Used Cars account on September 23 was $10,245.34. The stipulated issue was whether Cohutta had been harmed and, if so, the amount of damages it had incurred, due to its failure to receive notice of the dishonored check until September 23.

Federal Reserve Bank Operating Circular No. 13, which was in effect at the times pertinent here, provided, inter alia: "All Reserve Banks and collecting and paying banks shall handle cash items in accordance with the following uniform instructions regarding protest and wire advice [which includes all forms of electronic telecommunications] of nonpayment . . . WIRE ADVICE of nonpayment of an item of $2,500 or over, [except in certain circumstances not present here]. Include in the advice of nonpayment (1) the amount of the items, (2) the reason for nonpayment, (3) the date of the cash letter, (4) the name of the drawer or maker, and (5) the names of the institutional identifiers of all endorsers preceding the Reserve Bank." (Indention omitted.) Compliance with Federal Reserve regulations and operating letters "constitutes the exercise of ordinary care," OCGA § 11-4-103 (3); and "[t]he measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, . . ." OCGA § 11-4-103 (5).

Although this case presents a question of first impression in this state, it has been held in other jurisdictions with the same Uniform Commercial Code provisions "that failure to comply with the 'wire advice' requirement constitute[s] failure to exercise ordinary care invoking the measure of damages set out in [OCGA] § [11] 4-103 (5)." *Yeiser v. Bank of Adamsville*, 614 SW2d 338, 343 (Tenn. 1981); *Whalen & Sons Grain Co. v. Mo. Delta Bank*, 496 FSupp. 211 (E.D. Mo. 1980); *Colorado Nat. Bank v. First Nat. Bank &c. Co.*, 459 FSupp. 1366 (W.D. Mich. 1978). There can be no recovery, however, unless there is a clear causal relation between the bank's actions and the claimant's loss. "Thus, to recover from a bank for the mishandling of a check, the claimant must show two things: first, that the bank mishandled the check, and, second, that the claimant would have had a reasonable chance of collecting the amount owed if not for the bank's mishandling." *Alioto v. United States*, 593 FSupp. 1402, 1417 (N.D. Calif. 1984).

It is undisputed here that no "wire advice" notice was given

Cohutta by Home Federal that the check was being returned. In seeking redress for Home Federal's "mishandling," Cohutta contended that if it had received notice that the item was being returned on September 15, its first business day after the check was dishonored, or on September 16, it could have collected $43,926.99 of the amount in question after paying all the other checks drawn on the Earl's Used Cars account on those dates. However, at all times subsequent to September 16, the account balance in the Earl's Used Cars account after payment of unposted checks was significantly less. Cohutta's vice-president also testified that when he did learn of the return of the $53,500 check from Home Federal on September 23, he decided that he "would not just arbitrarily freeze that account without knowing exactly what had taken place with this item that was being returned to us. I knew there was something irregular about being notified. I should have been notified several days prior to the 23rd that this item was coming back. And I was not. So, I did not know whether it was something my bank had done in error, or whether there was a problem between my customer and his customer, or whether there was a problem between the customer and the bank that was returning it. . . . I felt that if I seized this account, and if I did damage my customer, I could very well open our bank to exposure. I knew there was something that had not been done properly here, and I needed all the facts. And so, for that reason, I made a conscious decision not to seize that $10,245 on that day."

Thus, even though Cohutta had the opportunity to charge back and recover the entire $53,500 item on September 23 before the unposted checks were paid from the account, substantial questions were raised as to the propriety of taking an action which could seriously prejudice Cohutta's customer without further investigation of the unusual delay. On the other hand, had notice of the returned check been timely made, it is possible no questions would have arisen, and Cohutta would not have hesitated to seize the money that was then in the Earl's Used Cars account. We therefore conclude that here, as in *Alioto v. United States,* supra, a question of fact was presented as to whether Cohutta "had a reasonable chance of collecting the amount owed if not for [Home Federal's] mishandling." Id. at 1417. There was sufficient evidence for a jury to find that when notice was not received until September 23, Cohutta felt constrained from following its normal procedures because of the unexplained delay.

The trial court apparently directed a verdict in Home Federal's favor on the theory that since there was sufficient money in the Earl's Used Cars account on September 23 to charge back the returned check if the outstanding unposted checks were not paid, the case should be decided as a matter of law based solely on the balance available in the account. Although this was certainly a relevant factor

for the jury to consider, the reasons surrounding the decision to pay the unposted items before seizing the funds in the account, to wit, the delayed notice of the return of the check, also presented a pertinent factor to be considered. "The requirements which must be met in a directed verdict situation are very strict and where, as here, there is some, though slight, evidence to support an issue raised in the complaint, it cannot be said, as required by OCGA § 9-11-50 (a), that 'the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' Therefore, it was error to direct a verdict for appellee. . . ." *Hall v. Rome Auto. Co.*, 181 Ga. App. 621, 624 (3) (353 SE2d 542) (1987).

*Judgment reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 8, 1988.

*Dennis D. Watson*, for appellant.
*Walter J. Matthews, James D. Maddox*, for appellee.